The next case on the call today is Agenda No. 6, No. 128763, the State of Illinois v. Elite Staffing, Inc. Counsel for the Attorney, you may proceed. Good morning, Your Honor. My name is Amy Manning, and I represent Elite Staffing, and I am arguing on behalf of the agency defendants today. This Court has said in many contexts and in many cases that when the language of a statute is clear, the statute is to be given its plain and ordinary meaning. In this case, the Illinois Antitrust Act contains in the definition section a carve-out, and that carve-out says that service shall not be deemed to include labor which is performed by a natural person as an employee of others. It's our position that that language is so clear that the State's claims in this case related to employment coordination on labor cannot stand under the Illinois Antitrust Act. That language is so clear that every court prior to the lower court here to consider that language found that the Illinois Antitrust Act excluded any antitrust claims related to labor. Our journey on this starts with the Seventh Circuit more than 25 years ago in Oregon where the Seventh Circuit found that employment-related claims were excluded from the Illinois Antitrust Act. Next, we move to 2018 when both in the Butler case in the Southern District of Illinois and in the DeSantis case in the Northern District of Illinois, those courts in the context of no-poach cases found that there was no basis to bring those claims under the Illinois Antitrust Act. Now, in Illinois, we charge our legislature with understanding court decisions, having knowledge of them, and acting accordingly. In fact, this court said in People v. Way, the legislature is presumed to know of judicial decisions and silence in the face of those decisions indicate its acquiescence. We have a number of things we can look at to see that the legislature has acquiesced to those decisions. In other cases where federal courts have construed the Illinois Antitrust Act in a way that the legislature does not agree with, they have taken action. In California v. Infineon in 2007, a federal court in California ruled that there was no parent's patriae authority by the Illinois AG. Within two years, the legislature acted to amend the statute to make sure that that parent's patriae was in the statute. And in fact, on the floor of the Senate, when the amendments were introduced, a legislator specifically referred to that California decision. We've seen no action by the legislature in response to these three federal courts. And in fact, recent activity by the legislature demonstrates that the legislature also reads the statute the way that we read it. Just recently, there have been amendments made to the Day Labor Act. Those amendments require coordination between clients and their staffing agencies. Any employee who has been employed for 90 days in any 12-month period is supposed to get the same salary of an equivalent person as the client. That means that the staffing agencies and the clients will be talking to each other about wages. It can't be that the state's reading of the Illinois Antitrust Act is right when that is something that is now required between the clients and their staffing agencies. And so we see evidence that the legislature intended this exactly as we read it. Now, the state points to a separate provision, the labor exemption, and tries to put a limit on the definition, saying that the labor exemption limits that definition in Section 10-4. But there's no evidence in the language to support that. There is no limit in the labor exemption on Section 10-4 where the definition occurs. And there's nothing else in the language that indicates that limit should exist. So on that basis alone, when we just look at legislative history, what the legislature has done, as well as the plain language of the Act, there is no basis to use the state's view of that statute. But, counsel, aren't we supposed to interpret a statute as a whole? Are you saying that Sections 5 and Section 11 are irrelevant when we're interpreting Section 4? Not at all. Absolutely, you interpret a statute as a whole, but you also have to look at the various parts and what they mean. And actually, we look at Section 10-11 and think that it supports us. And we also think that the comments to Section 10-5, if we even get to comments, right, it's a position you don't even get there. And this Court has said multiple times that the language is unambiguous, you don't get to any of those things. But if you look at 10-5, we'll start there, there's a comment in 10-5, and the state many times in its brief says 4 must be read with 5, but if you look at the comments, the comments actually say 5 must be read with 4, which makes sense, right, because 4 is a definition and 5 is more specific. There's nothing in the comments to 10-5 that says 4 must be limited by 5. And 4 is a more general statement, so that makes sense. With respect to Section 11, the comments there say that this statute is intentionally different than the federal statute, let me get the quote, where they talk about it. It says essentially, and I'll find it, but essentially it says that there are differences in the Illinois Antitrust Act, and they are intentional. As an example, it's clear that the legislature intended the Illinois Antitrust Act to not go as far as the federal laws. At the time that the Illinois Antitrust Act was passed in 1965, it was per se illegal under federal law for there to be vertical price fixing. The Illinois legislature chose a different path and decided to make that subject to the rule of reason. Similarly, at that time, group boycotts were per se illegal under federal law, and still are. The Illinois Antitrust Act was not. It decided that group boycotts would be subject to the rule of reason. So our legislature was doing something specific in that case, and it was making, it had different things related to the act. At the time the legislature did the amendments in 1965, the labor union exemption was in the federal law. They could have tracked that language exactly, as other states did. They didn't. They took out and put in a specific definition in Section 4. So reading the statute as a whole, I don't think causes any problem with respect to our interpretation of the statute. I'm sorry, go on. If we accept what you say we should, how we should interpret this and what it means, are we reaching an absurd result? I mean, basically okaying companies to collude with suppressing wages and workers? I don't think you are reaching an absurd result. Just as an aside, there's been a lot of difficulty in cases that are developing on no poach and wage fixing on whether they're illegal. The Department of Justice has had a difficult time convincing judges and juries to find those violations. But separate and apart from that, this court has said a number of times that when there is an issue that maybe people think should be different, the appeal is to the legislature. It's not to the court. The public policy is to be determined by the legislature. But I also don't think it is an absurd result, because again, our legislature made it clear that our interest act was a little bit more pro-business. Moreover, there are lots of employment laws that can be used to address things. And in a staffing agency situation, there are, it was a very well-developed set of laws that protects temporary staffing employees. And so I don't believe it is an absurd result to read this. And if the legislature wants to do something different, just as they did in response to California v. Infineon, they could. And the fact that they haven't for 25 years, there has to be some belief that they believe that that is right. And I don't know how they could have passed the amendments, the recent amendments to the Jay Labor Act, that requires this coordination can mean that the statute means anything other than we are arguing that it means. Going back to things that the state argues. They try to say that the union exemption is superfluous by our reading of the Illinois Am I Trust Act. But it isn't. Because it is specific to unions, it talks about a who, whereas if we read the statute the way the state is advocating that we read it, then that definition section does become superfluous. You would not need 10-4 if you read the union exemption to completely negate section 10-4. As I said, the bar committee comments, they actually support us. Here is the one that I wanted to cite to you before from 10-11. It says the IAEA is different from federal law. And it says, quote, it was very carefully made different from the federal act in certain important respects with a deliberate intention in certain situations of achieving a different result. And so that goes to your Honor's question about if it is absurd. Our legislature made a conscious choice that it was going to have an Illinois Am I Trust Act that was different than what other federal law or federal law was at the time and currently. So I don't believe it does lead you to an absurd result. But when we look at section 11, it provides when the wording of this act is identical or similar to that of a federal antitrust law, the courts of this state shall use the construction of the federal law. I don't think that federal law would approve this price fixing and this poaching. Well, the federal law, if there was interstate commerce involved, potentially there would be a federal case, potentially. There's the regulatory restraints aspect of this, the pro-competitive aspects, et cetera. So we'll put that to the side. But it says when the language is the same or similar. Right? So in this context, we have a labor exemption that does not have the same wording as the federal exemption. And so you can look at some aspects of that. But our definition that exists in the definition section, right, there is no federal analog to that. Now, we read so many things online these days. I actually pulled out the paper, right, the statute itself. And when you pull out the statute and you look at the different provisions, it's clear the labor exemption is its own section and the definition is the other section. And where language appears in a statute matters. By putting it in the definition sections, it is intended to cover the entire statute. And so, therefore, we believe that our reading of the Illinois Antitrust Act is correct. It is of note that in the Department of Justice's amicus brief, they took no position whatsoever on whether this court should consider federal law in making a decision under the Illinois Antitrust Act. And that makes sense that they took that position. They could have clearly said 1011 means you need to take federal law into account. They could argue that and say, you know, so, therefore, we want a certain outcome. They specifically said we are not taking a position on whether the court should look to federal law in construing that. And I think that's important because that definition section is different from the labor exemption and from other parts of federal law. So, therefore, we think that, you know, 1011 doesn't create an issue. And it also says same or similar, right? And so, where it's the same or similar, yes. But, yeah, there is no section of the federal antitrust law that is analogous to the statement in 10-4. Counsel, could you talk a little bit about the fact that the appellate court modified the question and how we should look at that? So, the way the appellate court, I didn't really understand the way that the appellate court modified the question because the question they answered is not an issue in this case. They modified it to a question that was about the services rendered by agencies, et cetera, staffing agencies, to their clients. But in this case, one of the defenders is their client, right? It's not that there was an allegation that the staffing agencies had gotten together and agreed with each other on the commission rate, let's say, that they were going to So, that question is not an issue in this case. That's not what's been alleged by the state. And everybody, I think, agrees, including the state, that the question to be answered is the one, the issue that's presented by the chancellery court when it's certified the question. So, to address Your Honor's policy question too, this court has said a number of times that it is not this court's role to rewrite legislation. It is to interpret it as it is written. As we said, every court to look at it before the circuit court has found that labor-related or employment-related claims are excluded from the act. And we, therefore, ask this court to reject the state's claims in this case. Thank you. Thank you very much. Counsel, please be up and ready. Good morning, Your Honor's counsel. May it please the court, I'm Christopher Turner, the Assistant Attorney General representing the plaintiff at Belize State of Illinois. This court should answer the certified question no and reject the defendant's reading of Section 4 of the Act to create a broad, novel exemption from Illinois Antitrust Law for all Illinois employers who conspire and collude over the conditions and working conditions of their employees. The court should reject their reading for four reasons. The Act's plain terms, the Bar Committee comments that discuss those terms, the federal case law interpreting the federal analog and very similar provision in the Clayton Act Section 6, and the implications of their reading. Going straight to the plain terms, the defendants improperly read the definitional sentence in Section 4 in isolation and ignore the statute as a whole, particularly Section 5, Paragraph 1, the labor exception. Instead, these two provisions should be read together. They're both the only provisions of the Act that refer to or discuss labor. And when they're read together, it's clear that the intent of that definition is to exclude from the antitrust regulation when employees and their unions organizing to restrain their own labor in order to achieve legitimate, lawful labor objectives in the collective bargaining process, then that is outside of the antitrust regulation. It doesn't create the broad exemption that competing employers conclude. And if they meant, if the General Assembly had intended such a result, they would have said so, they would have said so clearly. They would have instead said that compensation or working conditions offered by employers is outside of the commodity or of the service. The Bar comments also support this reading. They do instruct that these two provisions should be read together. The defense question, they say that the Bar comments that are interpreting Section 4 are Bar comments to Section 5. But the Bar committee in those comments explicitly tell us that we should clarify that they are, in fact, trying to interpret Section 4, the provision 4. There are four paragraphs in the Bar committee comments that relate to Section 5.1, the labor exception. The last one says specifically that 5.1 should be read together with 4. And it says the provision 4 that excludes labor by employees to others from service. And then it immediately explains that this provision, meaning the definitional provision in number 4, makes the act inapplicable to labor and non-labor groups, but insofar as they relate to the restraint of competition concerning labor itself. Again, this is going back to what the plain language of that definitional statement is saying. It's saying that what it's taking out of antitrust regulations when employees restrain their own competition in order to sell their services to employers in order to achieve their labor objectives, in order to improve their working conditions. Counsel, what about O'Regan and Dyslandis and the fact that the legislature hasn't modified Dyslandis? Your Honor, while ignoring the federal case law that interprets the Clayton Act and the similar federal provision, they do rely on those federal provisions which construe our statute, the Illinois statute. Section 11 doesn't instruct the courts to look in that way. And in general, federal courts are not experts on state law. A federal decision is never binding on any state court, not only this court, but any state court, when it's construing state law, and particularly state statutes. So the statutory rule of construction that the General Assembly is often assumed to have acquiesced to a reading of an opinion, there is no case law that has ever applied that, as far as we're aware, and they certainly don't say, to a federal decision. The fact that the General Assembly has in the past once actually amended in response, amended the statute in response to another federal decision, that doesn't change the rule of statutory construction. It doesn't change the expectations that we give of what the General Assembly will do. And indeed, even that case that they refer to, while it was that federal case, that was only one of the cases, including, if you look at the text of the federal case that they cite, it was looking back at a Seventh Circuit case that also may not, but more importantly, an Illinois circuit court decision that had reached the same result. It was reacting to all those cases. But regardless, if this court were not to use O'Regan in such a manner in order to find legislative acquiescence on the part of the General Assembly, it would be the first time that any court would do so, as far as we're aware. But going back to those federal cases, the federal cases themselves provide good reason and sort of reflect why we don't usually look to federal decisions construing state statutes. Because they provide only conclusory analyses, which don't engage in any of the analysis usually required under the antitrust statute. And there's good reason for that. In the federal claims in each of them, the central issues were the federal action, the federal claims at issue. So in the O'Regan case, it was a non-competition clause at issue. And the real federal claims was actually an employment discrimination claim was the primary one, and then also a federal antitrust action. That's what almost the entire decision is about. Only at the tail end of the decision does it reach the tag-along claim under the Illinois antitrust statute. And even when it does, it's one of three alternative bases in which it rejects it. First one, a standing argument. And that's the corollary to how it got rid of the federal claim. And that's what it spends the most time on. Then also there is another exemption for the non-profit organization that it was. Only in the third, there's one single final sentence at the end. It gives us a third alternative reason, the one which basically the certified question tries to track, saying, well, then there's this provision in Section 4 which excludes anything having to do with labor services. It doesn't look at the Clayton Act, and it doesn't look at the federal provision in which it was modeled, in which the definitional sentence was modeled. And it doesn't mention Section 11 at all. The other two cases were the federal trial court cases that were just follow-on cases citing to O'Regan, adding no more analyses. So these are not the ones which actually provide the analysis, the careful analysis that the antitrust statute requires. Counsel, what about this argument on the other side? As I understand it, the Bar Commons talked about the Illinois legislation being more pro-business than the federal statute. Well, actually what they're looking at in Section 11 was that the entire import of Section 11 is recognizing that the antitrust statute was modeled on the federal statute and that usually whenever there's a provision that's similar or identical, but of similar, that you should be following it. It was recognizing there are differences, and it was recognizing that one of the major concerns in putting on Section 11 was actually that the state statute might actually be applied in some circumstances when the federal statute wasn't, that the business community was worried about that. Now, there are certain circumstances where the General Assembly did diverge from the federal statute, but it wasn't a sort of thing that we're going to make a more pro-business, pro-competitive. Yes, for instance, the price fixing, we treated price fixing differently. At that time, the federal law treated vertical price fixing as a per se liability, and the General Assembly decided not to adopt it. But it was very clear about that. It was clear about that because it specifically listed in Section 3-1 the catalog of the categories of types of per se liabilities, and it did not include, I'm sorry, 3-1 was actually, it put in price fixing, but it made clear that it was about horizontal agreements and not about vertical agreements. And then the Barr comments, in turn, as counsel points out, the defendant's counsel points out, were specific about it, pointing out that this was the case, that vertical price fixing would not be subject to per se liability under the state statute. But you don't see any kind of distinction like that in the Barr comments regarding Section 5-1 and Section 4. To the contrary, what the Barr comments make very clear is that Section 4 was meant to relate only to, the definitional sentence in Section 4 was meant to relate only to the agreements between labor and non-labor groups as they relate to the restraint of competition for labor itself. And then it goes on to clarify all of a sudden. Go ahead. I have a real basic question. What are the Barr comments? I mean, really basic. I mean, we don't see that kind of thing usually in statutes. Who are they? What is it? How did they get there? And obviously my point is, how do we use them? Well, you have a great point. It was because the Barr committee was involved in the drafting of the materials and so involved in the drafting. Which Barr committee? It's the only one. I don't know the full history of it, Your Honor. I'm sorry. So some Barr organization drafted comments and then the legislature incorporated those into the statute itself? They're not part of the statute itself, but they are part of the historical notes. Let's say I go online. I go online and I look up the statute and they're all going to be listed there, right? These comments are not some secondary source. They're embedded into the statute. Is that right? Correct, Your Honor. And because they weren't just drafting the comments. They assisted in drafting the original statute. And the General Assembly decided in the end what terms would go into the statute and which not. But they were involved in the drafting of the statute. The General Assembly also decided to include all of this report in the statute, following the statute or something like that. Because it's an important legislative guide, Your Honor, this court has looked to the Barr comments even when the language is plain. So, for instance, in the Schultzville Building Center decision, it was looking whether or not the statute applied to land, to claims involving land. And it's all in the plain text. In the definition in Section 4, the commodity included real property quite explicitly. So that was quite explicit. But the court still then looked to the Barr comments to make sure that its understanding was correct. And the Barr comments explained to Section 4 that the whole intention when they were rewriting the statute and passing this new statute was to close a loophole where before the statute was not subject to real estate. So the Barr comments provided important support. This case is very different from Schultz Building Center. Because here, contrary to the defendant's characterization of the provisions, it does track very closely the federal labor exemption. The sentence in the definition section that labor performed by natural persons as employees to others is just like the first definitional sentence of the Clayton Act's labor exemption, which says labor of a human being. What are the differences they point out? The federal act, it says that labor of a human being is not a commodity or article of commerce, the regulated activities. Because the Sherman Act and the Clayton Act don't include the term services. But they were interpreted to apply the services before 1965 so that when the General Assembly did it, the only difference it was was they were more specific. It was that we're going to say instead of labor of a human being is not a commodity, it's labor performed by natural persons is not a service. And otherwise, the beginning sentence is also just more specifically tracking the language in the federal courts, particularly the Supreme Court, when it interpreted the federal provision. Because it says the labor performed by natural persons as employees to others. That echoes back to Apex Hosiery, the case to be cited. The early case in the 1940s, which first read the labor exception. And when it interpreted the provision of labor of a human being, what it meant, it explained it. It meant that it plainly meant that the restraint by employees of their services to employers to organize in order to achieve better working conditions, that's not the kind of restraint and competition that the antitrust act regulated. So that's all the court, to the extent they changed that sentence from the original opening sentence in the federal exemption, it was just to make it more specific and to more specifically track back to the federal case law. The same thing actually in the labor exemption. There was no argument that the labor exception under Section 5.1 is somehow different than the, or meaningfully different for this case from the labor exception. But what the crux of the defendant's argument is, is that they separated, is that the General Assembly ended up just separating these two. And it was that structural choice that they want to read into that, is that the General Assembly intended basically the opposite of what the Congress intended with the labor exception. The labor exception, the federal case law was already developed. The whole point of that exception was to protect labor and its efforts to organize in order to improve its conditions against business. They want to flip that here and just say just because they moved the first sentence to the definition section, a practical choice, right, because you have a definition. We have a definition section and we have an exception section, so they decided to split them into two. But they want to read that, no, instead we're going to read that provision as being about providing employers the ability to include in order to suppress the working conditions and to suppress the wages that they offer to employees. I mean that it would be a novel exemption, very broad, and clearly not what was intended. Because when they took the language from the Clayton Act exception, the General Assembly, what they were modeling our act on that language, on those provisions, as it had been interpreted by federal case law, was that they wanted to – that was a clear reflection of the intent to have – for that provision to provide the same kind of protections for labor that were provided by the federal antitrust law. I'm going to the implications of the defendant's reading. Their reading does – their reading of Section 4 would render Section 5-1 superfluous and would not make any sense. Now, both of our sections, both of our readings do have some overlap, but their reading in particular is – and is completely superfluous. The distinction they try to make is that somehow 5-1 is just about the who. It's about providing exception for the labor. And then 4 is about the what and the scope and therefore gives the protection to the employers. But Section 5-1 is both who and what. It substantively defines what the exception applies, what kind of protection applies. It does – labor can't engage in boycotts or other kind of activity that's not directly related to achieving lawful labor objectives. It's specific in that. And the bar comments, of course, make that point as well. So it very much – just because there's something – if they're trying to take what 4 doesn't add is, 4 doesn't add any protection beyond the collective bargaining process. It doesn't add – just 4, just like 5, is limited to the protection of when they're reaching agreements that are involved and related to the collective bargaining process. Can I ask another basic question? As Justice Holder-White has pointed out, the appellate court modified the certified question. How does that work? Are we looking at that question or are we looking at the question as the circuit court drafted it? Your Honor, that is one of the points where the parties are in agreement. You should be looking at the certified question and answering the certified question there. None of the parties asked the appellate court to modify the question. It did so, understandably, because it was just – in the briefing, it was confused about what the agency defendants were seeking. I mean, they made up this term labor services that they had adopted from the Seventh Circuit, but they didn't know whether – you know, was labor – did they mean the entire employment market, which is what they're – is the exemption they're asking for here, or was it something narrower? So the court modified it, but that – this court should look at the original certified question. And in doing so, can we – how do we use the appellate court reasoning then if you're both agreeing that the question was modified and it should not have been? What do we do with that when we read the appellate court opinion in their reasoning? Well, it still provides important guidance for UPS court. I mean, the court still did recognize that the plain language was related to the collective bargaining. And when it decided – the question decided, it would look at whether or not it extended beyond that, beyond the collective bargaining process. But it did – the plain language of the statute itself trying to restrain employees' services that they're providing to employers, it still starts off with that analysis. And then it still also gives you analysis going through the federal case law, which they rely on, right, the Reagan case, the Buffner case, the DeSantis case, and distinguishes each of those cases. Now, ultimately, you don't – I think this court doesn't need to go as far as the appellate court did in its efforts to distinguish it because those don't provide – they don't provide any real meaningful guidance with regard to the interpretation of the Section 4 definitional sentence. They don't look at the Clayton Act at all. They don't look at Section 11 and the instructions it gives courts. And it's not – this court isn't bound by federal case law, but what Section 11 does is it tells you the General Assembly's intent, right? Their intent was this act is modeled on federal antitrust law. So this – so we ask courts to look to the federal cases interpreting that federal antitrust law for similar types of provisions in order to construe the meaning of our act and those provisions. And here, this court has recognized that far more different – provisions with far more different texts are patterned on the federal antitrust law and repeatedly looked to the federal case law interpreting those provisions in order to interpret our own act. We do that in College Hills with Section 3.1 where about – where it was looking at the meaning of the price-fixing agreements and its application of price-fixing. Section 3.1 is very specific and lays out a catalog of categories of types of agreements that are illegal under it, per se illegal under it, including price-fixing. But this court still looked at the federal case law first and what it said about what kind of agreements were prohibited by Section 3.1. And the guilt – Your Honor, I see I'm out of time now. So for the reasons that we've put forth in our briefs and the reasons here, the State asks that this court answer the certified question. Thank you very much. Counsel, in reply. Thank you, Your Honor. I have a couple of points. The first is my opponent said that if the legislator meant what we are advocating that the statute means, they would have said that. But they did say that. They said it with the definition that exists in Section 10.4. They also said it by acquiescing to the decisions of the federal court that they have acquiesced to for 25 years. And they also – We can trust that the whole idea of acquiescence, legislative acquiescence. Your friend and opposing counsel here says that that's not how acquiescence works, that we are – no case in Illinois has actually said that if there's a federal decision and the legislature here in Illinois doesn't do anything about it, doesn't change the legislation, that we must assume there's some agreement with the federal case. Is that true? And do we have any cases that say that? I think that here we have actual conduct by the legislature that guides us, right? So with Finnegan, there was – the federal court in California said no parents' patron rights for the state agency. A pretty big deal, right? In Oregon, the 7th Circuit said employment-related cases are not covered by the Illinois Antitrust Act. And in the Ridge cases, two district court cases say, yeah, we agree, it's not covered. That's a big deal, according to the state, just as it's a big deal to say the state doesn't have parents' patron action. So here we have – we know that it's a big deal and the legislature didn't act. But with Finnegan, they did act. And the counsel says that, well, they were reacting to a number of cases. The only case that was mentioned on the floor of the Senate when they made those changes was the California federal case. So they were reacting to a federal case, and we see that they do react to federal cases. So I'm not sure that counsel's argument makes sense when we have actual evidence of what the legislature did with respect to the Illinois Antitrust Act. Isn't Oregon a little bit different? Because that actually dealt with an individual employee and their employer, not a staffing service whose commodity is the sale of employment service. That was an individual. So it is somewhat related, but there is a critical distinction, which would appear that if the General Assembly did not make a change based on that, it really wouldn't impact whether or not they did so intending to let your claim operate in the way it did. Correct? I don't think so. So I think the Seventh Circuit ruling, what that demonstrates is any kind of employment-related antitrust case is excluded by that very broad exclusion. And also, if you look at the language of what the Seventh Circuit said in Oregon, I mean, I said to Slandus, I meant Oregon, and counsel says, oh, they didn't provide a lot of reasoning in relation to that. That's because they didn't think that there was a need for a lot of reasonable, we could quote, enrollment. And one other thing I want to address is he says that Seventh Circuit ruling was dicta. It is not dicta. We cite a number of cases in our brief where the Seventh Circuit has said alternative grounds for a ruling are not dicta, so it is not dicta. But in Oregon, the Seventh Circuit says, finally, to the extent Oregon's claims relate to an alleged market for labor services, again, this is a broad ruling, they are specifically excluded by 10-4 of the Act, which states that service shall not be deemed to include labor, which is performed by natural persons as employees of others. With respect to Slandus, they say, again, oh, it's not very significant reasoning, they say. And, in fact, they even address an argument by the state here. The court agrees that the plain language of the statute excludes plaintiff's claim. And, again, this is a no-coach case where there also were allegations that wages were kept down because of it. But, again, wasn't Slandus an individual? It was an individual employee, correct, that wanted to be able to switch? Yeah, Slandus involved, if I remember correctly, I can't remember which industry it was in, but Slandus involved an approach where they were not allowed. It was McDonald's. And it was a claim that there were requirements that the different franchisees and the franchisees could not hire employees from corporate stores. So it's a no-coach case. It's not exactly the same as our situation either. But it was raised by an individual. The claimant was not, you know, it wasn't a claimant. It was a staffing agency wanting to transfer someone or provide someone to another McDonald's. It was an individual that wanted to transfer, correct? It was an individual. But here you would also have individuals that wanted to transfer. So I think the case is actually quite close to our case. But this individual, Slandus, made the move or the approach to that McDonald's on her own? Yes. And do you have any of the individuals that you supply to people make the approach to them on their own? So the state is standing in a Patriot position. And so they are standing in the shoes of the employees. And they allege in their complaint that people wanted to switch and were not able to do so. So I think it is very, very similar to what happened in Slandus. When your company goes into contact with one of the staffing companies, you don't allow, and no individual employee is making an agreement with the company. It is made with the staffing company and colleagues, correct? Yes, but there is no individual making an agreement in Slandus either. So I think Slandus is pretty instructive related to our case. And again, the main purpose that we cited for is its interpretation of the IAA. Okay, in addition, so I talked about Infineon. We have told you that the only case that was cited wasn't these past cases that the legislator was responding to, to your honor's point earlier. Another thing, so in talking about the Bar Committee notes, I had the same reaction that I didn't understand if they were legislative history or not. They have been relied on by this court, at least the court has looked at them, in construing the IAA. But I don't think anything in those Bar Committee notes cut against at all our position at this court on what the interpretation of the IAA is. And I'll come back to that in a moment. My next point is with respect to going back to the analysis by the other federal courts. In Slandus, they say that's a very quick analysis. They say, again, the court agrees that the plain language of the statute excludes plaintiff's claim. Plaintiff's claim, again, was a no-poach agreement related to a no-poach agreement, which alleges that no higher agreement artificially suppressed her wage, the price paid for her services. Although plaintiffs suggest this is merely an exception for collective bargaining, the same exact point that the state made, the statute includes a separate labor exemption. So in that case, the court gave effect to both sections of the statute. And that is what we want as well. They then just talked about the labor exemption. And they said, oh, it's sort of the same. It's not the same at all. And if you compare the language of the United States labor exemption and you compare it with the labor exemption that the Illinois Antitrust Act did, one is very short, one is very long. They say we believe in a labor exemption that refers to the commodity of a human. So it starts off, the federal labor exemption starts, the labor of a human being is not a commodity or article of commerce. Okay, that is not the same language that is in our services exemption. It also exists in the labor exemption. It is not a separate definition. And remember, the legislature could have adopted wholesale the federal labor exemption because it existed at that time. So placement matters. Where a language exists in a statute matters. Our legislature put it in a definition. It carved it out. It has rendered legislation since then that relies upon that interpretation of the statute. In reference to the appellate court, I think everybody agrees on what the certified question or the question that we're asking this court to answer is. But even the appellate court has some language that sounds like they may agree with us. They say that individual labor is not a service. Otherwise, anti-competitive action restraining individual labor is permissible. I'm a little bit unclear on what the appellate court was saying, but it sort of sounds like even though they answered a different question, they may have agreed with us on the question that we think is before this court. For all of these reasons, we ask this court to rule that the state's claims cannot stand under the Illinois Antitrust Act. Thank you both so much for your arguments. Agenda number six, number 128763, the people of the state of Illinois, versus elite staffing at all, will be taken under the state of Illinois.